## HARMON ET AL., RECEIVERS, v. JEWETT, BIGELOW & BROOKS, A CORPORATION, ETC.

*Railroads — Action to collect demurrage — Defense by shipper — Inability to offset "debit" days by "credit" days — Because carriers discontinued unloading service — Breach of contract — Remedy of shipper.*

Where by the demurrage rules of a railroad the period from November 1 to December 18 was to be considered as one month in computing time detention, and a shipper was prevented from earning "credit" days with which to offset "debits," as provided in said demurrage rules, because of the action of the railroad in dismantling a coal-loading machine on December 1, the demurrage must be settled according to the state of the account as of December 1, and any injuries said shipper may have received by reason of the dismantling of the loading machine must be recovered in an action brought for that purpose and upon actual proof of loss and the violation of the contract as contained in said demurrage rules.

(Decided June 24, 1918.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Waite, Schindel & Bayless* and *Mr. Herbert Shaffer,* for plaintiffs in error.

*Messrs. Beaumont, Smith & Harris,* for defendant in error.

HAMILTON, J. This action was brought in the common pleas court of Hamilton county, Ohio, by the plaintiffs in error against the defendant in error to recover the sum of $1,092, claimed as demurrage accumulated from the detention of plaintiffs' cars in their yards at Toledo, Ohio, under and by virtue of the provisions of Demurrage Tariff No. 5404-F, I. C. C., No. 297, which tariff

had been duly filed with the Interstate Commerce Commission and published and posted according to law.

The cause was submitted to the court of common pleas in the form of an agreed case, without pleadings, under the provisions of Section 11472, General Code.

There is no dispute as to the amount of the demurrage nor as to the fact that the demurrage had lawfully accumulated under the provisions of the demurrage tariff.

Defendant in error, urging that the demurrage tariff is a binding contract between the parties, contends that plaintiffs in error are not entitled to maintain this action or to recover on the claim for the reason that plaintiffs in error breached the contract.

Plaintiffs operated a railroad, and, in addition thereto, maintained at its terminus at Toledo a dumping machine for the purpose of loading coal into vessels, for the lake trade, the use of which loading machine was included in the carrying freight charges.

On April 14, 1914, The Cincinnati, Hamilton & Dayton Railway Company duly issued and filed with the Interstate Commerce Commission its local freight tariff, which became effective May 15, 1914, providing car demurrage rules applicable on lake coal, vessel fuel or coke held for trans-shipment at Toledo, Ohio. Said demurrage rules provided, among other things, as follows:

"For the purpose of computing time detention shall be computed for calendar monthly periods, except April 15th to May 31st, inclusive, which

shall be considered as May detention and treated as one calendar month. November 1st to December 18th, inclusive, shall be considered as November detention and treated as one calendar month."

Said demurrage tariffs further provide:

"Cars of lake coal, vessel fuel or coke held at the above points for lake shipments or delivery to vessels will be charged demurrage computed under the following rules:

## "COMPUTING TIME.

"Rule 1—(a) Five days' free time will be allowed, to be computed on the basis of the detention to all cars released during each calendar month. * * *

"(f) From the total of the days' detention to all cars thus obtained

"(1) Deduct the number of Sundays and legal holidays included in the total detention of the car. Legal holidays are: Memorial, Independence, Labor, Columbus, Thanksgiving and Christmas days.

"(2) Also deduct 5 days' free time allowance for each car.

"(3) After making the deductions as provided above in 'f-1' and 'f-2', the remainder, if any, will be the number of days for which the consignee will be charged demurrage, except that, if there are credit days in any current calendar month in excess of debit days, such excess credit days shall be applied to or deducted from the excess debit days of the preceding calendar month only.

"Note:—Excess credit days of any current calendar month can not be deducted from excess debit days of the following calendar month."

It will be noted that the demurrage charges are designated as "debits," and that the days saved from those allowed free of demurrage are designated as "credit" days, for which deductions may be made from the excess debit days.

On November 6, 1914, plaintiffs notified the defendant that not later than December 1 they expected to commence dismantling the old machine for the purpose of constructing a new one for handling the lake coal; and, as stated, they did start work on December 1st in the actual dismantling of this structure.

It is admitted that after November 30 defendant tendered no coal for shipment or unloading, and that the demurrage claimed under the demurrage tariff had all accumulated prior thereto. Neither is it claimed that defendant tendered any shipments of coal to plaintiffs for shipment after the date of the notice above referred to.

Defendant in error urges that by reason of the dismantling of the loading machine it was prevented from earning credits which under the terms of the demurrage tariff would offset the debits which had accumulated; that the demurrage tariff constituted a contract between plaintiffs in error and defendant in error and that said contract continued to December 18, the date upon which it was agreed navigation on the lake should cease, and that plaintiffs in error therefore breached said contract and by reason thereof are not entitled to maintain this action to recover demurrage claimed. No claim for damage is set up by defendant in error.

We can not determine the legal question involved without taking into consideration the Interstate Commerce Act of February 4, 1887, which makes it the indispensable duty of an interstate railroad carrier to file and publish schedules of all rates and any rules and regulations which in any wise "change, affect or determine any part of the aggregate of such aforesaid rates," and prohibits it from charging or receiving any greater or less or different compensation than specified in such schedules, from extending to any shipper any privilege or facilities "except such as are specified in such tariffs," and from making any change in such rates except by plainly changing the schedules or filing or publishing new ones, after 30 days' notice; on the delivery of goods for carriage by a shipper, he has a contract right to the rates named in the schedule at the time on file and published.

Certain penalties are attached for the violation of any of the provisions of this act.

In the case of *Pennsylvania Railroad Co.* v. *International Coal Mining Co.,* 230 U. S., 184, the court says in the syllabus:

"A published tariff, so long as it is in force, has the effect of a statute and is binding alike on carrier and shipper.   *   *   *

"While the Act to Regulate Commerce is in many respects highly penal, there is no fixed measure of damages in favor of a shipper compelled to pay the published tariff rate while his favored competitors are given a lesser rate by means of rebates.   *   *   *

"The Act to Regulate Commerce imposes on the carrier heavy penalties for its violations payable

to the Government and independent of the amount of rebates paid, and is thus a terror to evildoers; but for private wrongs by which private injury is inflicted the compensation recoverable by the injured shipper is measured by the damages actually sustained and proved."

It will be seen in applying this to the instant case that if the defendant in error were permitted to deny the right of plaintiffs in error to collect the demurrage, it would in effect give the defendant shipper the right to name the amount of damage he should recover, and would be directly against the holding in this case.

It has also been held that the provisions of the act must be read into and constitute a part of the agreement based on the tariff schedule. It therefore becomes incumbent upon the plaintiffs in error to collect the demurrage in question to avoid liability under the Interstate Commerce Act.

In the case of *Horton* v. *Tonopah & Goldfield Rd. Co.,* 225 Fed. Rep., 406, the court says:

"Where the rules of a car service association, regularly filed with the Interstate Commerce Commission, prohibited agents from storing carload freight in warehouses or on ground belonging to the railroad company without adding car service charges, the same as if the freight had been left in the car, the carrier's right to collect demurrage does not end when the shipment is unloaded, so that the car may be released for service, *the rule being obligatory upon the carrier, and violations thereof constituting unlawful discriminations.*"

It will, therefore, be seen that a failure to collect the demurrage in question would be a violation of

the Interstate Commerce Act and would open the door for wide abuse in the nature of indirect rebate, and would have a tendency to make ineffectual the operation of the law itself.

We are of the opinion that under the Interstate Commerce Act, and the holdings above cited, and other authorities submitted, the defendant in error must pay the amount of demurrage claimed, and any injuries it may have received by reason of the dismantling of the loading machine prior to December 18, 1914, would have to be recovered in an action brought for that purpose and upon actual proof of the violation of the contract and loss thereunder.    Again quoting from *Pennsylvania Rd. Co.* v. *Coal Co., supra,* "for private wrongs by which private injury is inflicted the compensation recoverable by the injured shipper is measured by the damages actually sustained and proved."

For the reasons above stated, the judgment will be reversed, and judgment may be entered here for the amount claimed.

*Judgment reversed and judgment for plaintiffs in error.*

JONES, P. J., and WILSON, J., concur.