Copelan et ux, *v.* Stanley Company of America, Appellant.

Argued October 14, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*C. D. Swartz,* with him *Ward C. Henry,* of *Swartz, Campbell & Henry,* and *Herbert A. Barton,* for appellant.

*Theodore G. Rich,* of *Bellwoar & Rich,* for appellees.

OPINION BY HIRT, J., January 30, 1941:

On January 31, 1938 the wife-plaintiff, as a patron, attended a motion picture theater operated by the defendant on Market Street in Philadelphia. At the edge of the sidewalk along the entrance to the theater there was a step 6 inches high to the level of the lobby floor. The lobby was paved with tile; the step at the pavement's edge was 18 inches wide and was constructed of terrazzo, a synthetic material of marble chips and cement ground to a smooth surface. Plaintiff, in coming out of the theater about 7:30 P.M., as she neared the pavement edge of the lobby, slipped on the terrazzo step and was injured. The case was tried twice, each trial resulting in verdicts for the plaintiffs. If we give this plaintiff the benefit of the most favorable inferences from the testimony as we are bound, there is nothing in the case charging her with contributory negligence. Defendant's negligence is the sole issue involved.

"It is settled that one maintaining a theater, or similar place of amusement for which admission is charged, is not an insurer, but must use reasonable care in the construction, maintenance and management of it, having regard to the character of the exhibitions given and the customary conduct of patrons invited": *Haugh et al., v. Harris Bros. Am. Co.,* 315 Pa. 90, 172 A. 145. In buildings designed for theater use, entrance is often provided through a lobby built on an incline from the level of the street but there are many theaters,

open daily to the public, where the only entrances are by means of one or more steps from the sidewalk to the level of the theater floor. (The Academy of Music in Philadelphia is perhaps an extreme example of older buildings of this type; there are many of more modern construction.) The step at the entrance of defendant's theater in itself does not convict it of negligence. If properly constructed a prudent owner is not bound to foresee that one using the step in the exercise of ordinary care would be exposed to unnecessary or unreasonable danger. 33 A. L. R. 215.

There is some testimony of a crack in the surface of the step and of an open joint between the step and the lobby floor. We may ignore this testimony for the defects were trivial and did not in any way contribute to the cause of plaintiff's fall. She says her foot was not caught in any defect but that she slipped on the smooth surface of the terrazzo step made dangerous by a wearing away of the stone by continued use, inclining the tread forward. It is therefore necessary to determine from the evidence—again resolving all conflicts in plaintiff's favor—whether the step upon which she fell was constructed of reasonably suitable material and was properly maintained. It is not contended that there was any foreign substance on the step. The step was dry and was well lighted.

Plaintiff said that one had to stoop to the level of the step to see that it was worn at all, though if viewed closely "it was a very noticeable wearing." There was no well defined depression in the surface of the step. The following from her testimony summarizes what she observed: "Q. Well, how deep would you say it was worn out? A. I wouldn't be able to say how deep. Q. Was it worn in a manner similar to what I have tried to describe, that we have seen in other stone steps? A. But it wasn't that kind of a deep worn out step. If it was, it could be seen with the eye, without bending

down to have to get it. This was something that if you were on the level with it you could see it was worn down. You could see that it slides right down here." (Perhaps referring to her exhibit, a photograph of the step taken from the sidewalk which shows so little wearing away of the stone as to be negligible.) An architect who examined the step at plaintiff's request testified that the center of the step was worn badly and that by a process of settling was tipped forward creating a dangerous condition. He could not state definitely the extent of the incline but estimated that the step had settled unevenly from about 1/8 to 3/8 of an inch at the center of the step toward the sidewalk. But he testified further: "Now, to what extent that slope is, whether one was a quarter of an inch and one was a half inch to the foot, that I couldn't tell you. Q. You were sent to examine it by Mr. Winnett? A. But I didn't have instruments. That is the only way you could examine it, with instruments. Q. In other words, then, no one—now I may be wrong about this, and if I am, I want you to correct me—you yourself, with the trained eye of an architect and so on, couldn't detect the difference between the front side of that step and the back side? A. No human eye could ever do that. Q. So no human eye could have done it? A. Not if you are going to hold me to a sixteenth or a quarter of an inch." He also said: "Well, so far as the wear is concerned, any floor or any step that wears with time, will be slippery, especially terrazzo. In this case it was the incline that was dangerous and not the slipperiness."

The rule that, in a negligence case, where measurements are material and such measurements could have been made by plaintiff, uncertain or conjectural estimates made by plaintiff's witnesses cannot prevail over actual measurements made by defendant (*McIntyre v. City of Pittsburgh*, 238 Pa. 524, 86 A. 300) does not

apply for the reason that defendant produced no evidence of actual measurements. But the burden was on plaintiff to prove defendant's negligence and this burden has not been met by the vague and indefinite testimony offered. A slight slope downward is consistent with proper construction of a lobby and step, especially where open to the weather. Neither the gradient of the top surface of the step nor the extent of the worn surface definitely appear, and plaintiffs have failed in their proof to bring this case within that class where the tread of a step has become so defective that the dangerous condition should have been discovered by proper inspection. *Bennett v. Jordan Marsh Co.,* 104 N. E. 479 (Mass.) ; *Tryon v. Chalmers,* 200 N. Y. S. 362. Terrazzo tends to become slippery from use but plaintiff's testimony is that "any floor or any step that wears with time, will be slippery, ......" It is conceded that it is a material commonly used for floors and stairways in many public buildings. In modern construction the use of abrasive materials on steps and stairways is common. But this theater was not a new structure and the law imposes no duty upon an owner to remodel his building periodically to conform with every change indicated by improved methods of construction as to design or the kind of materials to be used. To hold the defendant liable in this case would be equivalent of saying that a theater is an insurer of the safety of its patrons. In our opinion the defect complained of was too slight to render the defendant liable for the accident.

In *Chapman et ux. v. Clothier et al.,* 274 Pa. 394, 118 A. 356, the plaintiff, a customer in the defendant's department store was injured when descending a marble stairway; her foot slipped into a depression three or four inches in diameter. There was testimony that the surface at the front of the tread from a wearing away of the stone, was 7/8 of an inch below the unworn

step at the back. In commenting on this testimony the court said: "But that throws no light on the depth of the depression, as the line from which he measured was seven-eighths of an inch above the surface of the marble at the front edge. The evidence is that these steps were constructed with the usual incline forward, which fact was ignored by plaintiff's son when making his measurements." In *Tryon v. Chalmers,* supra, there was a marble stairway leading from the first floor to the basement in a department store and it was held that the fact that a proprietor permitted the edge of one of the slabs forming the step to become worn back 3/8 of an inch and down 11/16 of an inch without repair was not negligence making him liable to a customer who fell in slipping on the worn step. It was there said: "As a general rule, where a structure, not obviously dangerous, has been in daily use for years, as had this stairway in question, and has uniformly been safe, its use may be continued without the imputation of culpable imprudence and carelessness." See also *Dire v. Balaban & Katz,* 241 Ill. App. 199; 53 A. L. R. 865; *Walker v. F. & W. Grand 5-10-25 Cent Stores,* 137 A. 563 (N. J.).

The charge of negligence in this case has not been sustained. The material of which the step was constructed was reasonably suitable for the purpose and was one in common use. The degree of the slope of the tread of the step and the extent to which it was worn do not definitely appear and in the absence of testimony of a dangerous condition which defendant in the exercise of reasonable care should have observed and corrected, there is no evidence of actionable negligence. The combined resultant effect of all conditions testified to by plaintiff and her witnesses is not enough to raise a question for the jury.

Judgments reversed and directed to be entered for defendant n. o. v.