Schaff, Appellant, *v.* Meltzer.

Argued April 27, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

44

*Nathan Berlant,* with him *Matthew Kramer,* for appellant.

*Ralph S. Croskey,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 23, 1955:

On September 18, 1950, the plaintiff Paul Schaff, having purchased on the third floor of the defendants' establishment a consignment of shoes, was asked by the defendant Herman Meltzer to use the stairs, instead of the elevator, in descending to the exit on the first floor. The area surrounding the staircase was shrouded in darkness so that when the plaintiff arrived at the stair landing he attempted to throw some light on the situation by turning the electric switch. The switch, however, failed to work, whereupon Schaff decided to return to ask Meltzer to convey him to the first floor, after all, by means of the elevator. But as he started back he tripped over an irregularity in the level of the floor boards and, feeling himself about to fall, he seized hold of a handrail attached to the wall, the rail pulled loose, he lost his balance, plunged down 17 stairs to the second floor, and understandingly sustained serious injuries.

He brought an action against the store owners in the Court of Common Pleas, Philadelphia County, but was nonsuited and in the due course appealed here.

The learned Court below was of the impression that the plaintiff's case depended alone on his assertion that he tripped over some defect in the floor. The Complaint, however, avers that the defendants were negligent in various ways, to wit: 1. The defendants permitted the "stairway and the *platform* and steps and the *railing* thereof to be and remain in a dangerous, negligent and defective condition"; 2. The defendants failed "to afford sufficient, proper or adequate *lighting* at the said point"; 3. The defendants "gave to the plaintiff *no notice or warning* thereof, so that the plaintiff was caused to trip, stumble and fall and be thrown violently . . ." (Emphasis supplied.)

If anyone of these conditions was proved by the plaintiff to have been the proximate cause of the accident, or, if all these conditions together made out a case of prima facie negligence, he was entitled to have his case go to the jury. We have asserted on numerous occasions that: "A store owner who invites the public to do business on his premises, although not an insurer of the safety of the invitee, has the affirmative duty of maintaining his premises in a reasonably safe condition for the contemplated use thereof and for the purpose for which the invitation was extended, or to give warning of any failure to maintain them in that condition." (*Jerominski v. Fowler, Dick & Walker,* 372 Pa. 291, 295.)

Were the premises safe? It was shown that the floor boards were irregularly laid, with some of them rising one-eighth of an inch higher than others. The plaintiff testified: "As I turned to go back, my foot caught in the raised board." While an impediment one-eighth of an inch high seems a rather slight elevation against which to trip, it is a matter of common human experience that an obstacle in the dark assumes size and shape out of all proportion to its dimensions

in the light. The plaintiff's presence in the unlighted area was due to the fact that the defendant Herman Meltzer asked him to descend via the stairway since he (Meltzer) had some work to do on the third floor and could not transport him on the elevator. Having sent the plaintiff into the darkness a duty devolved upon the defendant to acquaint Schaff with the uneven surface of the floor, of which fact he was thoroughly aware. Max M. Meltzer, co-defendant, testified: "Q. Are the boards exactly even? Do they run this way all the way through from the edge of the landing from the steps leading to the fourth floor to the steps going down to the second floor? A. As I observed, there might be an eighth of an inch difference between the two. Q. There is a difference? A. Yes, and I note— note it might be one-eighth of an inch difference. Q. A difference of one-eighth of an inch? A. Yes. Q. That condition has existed quite a length of time, is that correct? A. That has existed for the last 20 years. Q. For the last 20 years? A. Yes."

Although the defendant Herman Meltzer knew he was sending his customer across an undulated floor which could cause him to stumble, he made no effort to provide him with a light so that he might see over what he had to take his feet.

But the lack of care did not cease even here. The purpose of a handrail is to provide guidance and support, but the handrail involved in this case turned out to be a sham and a delusion. It gave way like a rope of sand. It is also a matter of common human experience that the unexpected yielding of a supposed anchored prop will easily upset the equilibrium of the person who has turned to it for support. When Schaff, feeling himself slipping, seized the handrail, he naturally gave it all his weight, but when this support came loose in his hands there was added to the impelling

force of the original tripping the momentum of the drop from the collapsed handrail. From this point nothing could impede a dead fall. It was the plaintiff's misfortune that all this happened at the top of the stairs and the headlong pitch down those stairs was then but the natural sequence of the law of gravitation.

The defendants in their brief seek to make much of the fact that the plaintiff could not indicate on a photograph of the landing the exact spot where he tripped. It would be strange if he could. The accident happened in the dark. It is undisputed however that because of an irregularity in the floor, of which the defendants were aware; because of the lack of light, of which the defendants also had full cognizance; and because of the feebleness of the handrail, of which they should have had knowledge, the plaintiff fell. The citation by the defendants of cases where recovery was not allowed although the litigant fell over obstacles even one and two inches high does not affect the principle of law applicable in the case before us where the cause of action did not depend alone on the tripping medium but upon all of the items of alleged negligence already discussed.

One other matter needs to be mentioned. In the Court below, the Trial Judge would not allow the plaintiff to show the condition of the premises three months following the accident although it had been testified by one of the defendants that the premises had not changed since the date of the accident. We quote with approval what is said in American Jurisprudence, Evidence, Volume 20, Sec. 306, page 284, on this subject: "The broad general rule is that where there is no change in the condition of an appliance or the premises or the scene of an accident, evidence as to the condition of such appliance or place either before or after

the event in issue is relevant and admissible to show its condition at the time of such event, provided it relates directly to the issue in question and is not too remote in point of time."

Judgment reversed and a new trial granted.

Mr. Justice JONES and Mr. Justice CHIDSEY concur in the result.

Mr. Justice BELL dissents.