Strout *v.* American Stores Co., Appellant.

Argued April 24, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*George D. Sheehan,* with him *John Paul Erwin,* for appellant.

*Bernard I. Shovlin,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 21, 1956:

What degree of care does a store owner owe the patrons of his establishment? This question was definitively answered with ample authority in the case of *Vetter v. Great A. & P. Co.,* 322 Pa. 449, 454, where we said: "Mr. Justice SIMPSON, in Nettis v. Gen. Tire Co., 317 Pa. 204, 209, said: 'All the authorities agree that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended . . .' (citing cases). To the same effect we recently held in Kulka v. Nemirovsky, 314 Pa. 134, 139: 'Defendant owed to the plaintiff the affirmative duty of keeping his premises reasonably safe for business visitors, such as plaintiff, and of giving warning of any failure to maintain them in that condition . . .' (citing cases)."

In the case before us for consideration, Mrs. Florence E. Strout entered a grocery market of the American Stores Company in Norristown and proceeded through a turnstile to a counter where she purchased a ten-pound bag of potatoes. When she had taken only four steps away from the counter, her feet flew from under her and she fell to the floor to the accompaniment of injuries which one doctor described as: "transverse fracture of the distal sacral segment with the fragments approximated and some dorsal angulation at the fracture site." In an attempt to transmute these medical

terms into lay language the doctor employed a phraseology which could almost seem to describe a boulevard. He said: "The sacrum comes around here in a curve, normally, and it comes to almost a dead end here at the fracture site and then goes off in another direction, the portion of the bone beyond the fracture." For these injuries Mrs. Strout recovered a verdict of $5,000 (with her husband receiving an additional $800) which the lower Court reduced to $3,000. An appeal followed to this Court when the defendant's motions for judgment n.o.v. and new trial were refused.

The area of the floor which marked the scene of Mrs. Strout's mishap revealed an oily and gummy patch in which Mrs. Strout's heel left an indentation some 12 to 14 inches in length and about $\frac{1}{4}$ inch in depth. The floor had been waxed $2\frac{1}{2}$ hours prior to the accident. The plaintiff's daughter testified: "Q. Did you notice the condition of the floor at the spot where your mother fell? A. Yes. The area didn't look dry. It looked gooey. You could see the indentation of her heel mark in the wax. I would say the indentation was anywhere from an eighth to a quarter of an inch thick, where she went down. Q. You mean indentation of the wax was a quarter of an inch thick? A. That is what I mean, yes. Q. You said it looked gooey. What did you mean by 'gooey'? A. Oily, gummy. Q. Oily and gummy? A. Yes. I don't know how else you can describe wet floor wax."

The defendant contends that since it was not established that the wax had been improperly applied, the plaintiffs (wife and husband) failed to make out a case of negligence, citing *Bowser v. Penney Co.*, 354 Pa. 1, in support of that contention. It is true that we did say there that "it is not negligence per se on the part of an owner to wax or oil his floors", but we also said: "that the real question was whether such alleged improper application created a condition so obviously dan-

gerous to amount to evidence from which an inference of negligence could arise."

It needs little argumentation to convince the impartial mind that a one-fourth inch thickness of wax on a smooth surface can precipitate a pedestrian's fall as effectively as thrusting a loose roller skate under his striding feet.

The defendant cites *Spickernagle v. Woolworth,* 236 Pa. 496, in attempted further substantiation of its position, but there "the plaintiff failed to show how long before the accident the floor had been oiled," or "that it was in any other or different condition than would result from proper oiling." The plaintiffs here, to the contrary, showed that the floor had been oiled $2\frac{1}{2}$ hours prior to the accident, and it was demonstrated also that at the time of the accident the floor was in a condition other than that which "would result from proper oiling."

Where potatoes are on sale the more potatoes the merchant sells the greater is the success of the day for him. Thus, where the commodities which are sold are of such size and shape that to carry them away the encompassing package limits the purchaser's view of his immediate path ahead, nothing could be more necessary to the safety of the store patron than that the flooring beneath his feet be maintained in a firm and safe condition. The goods and wares in most stores are so displayed on shelves, and the advertisements which proclaim the virtues of those goods and wares are so hung on the walls, that the floor is about the last place to which the customer's attention is directed. Hence the need for particular care in keeping the walking area free of obstruction and uncoated with unctuous, greasy and oleaginous concoctions.

In the case of *Ralston v. Merritt,* 117 Pa. Superior Ct. 487, the plaintiff was injured when, carrying a shop-

ping bag 2 feet long and 18 inches wide, she slipped on a greasy and waxy floor in a drug store. In affirming the jury's verdict in her favor the Superior Court said: "It was not her duty to anticipate that it was necessary that she exercise greater care on account of the negligent treatment of the floor, of which she was ignorant."

In *Markman v. Bell Stores Co.*, 285 Pa. 378, the proprietor of a grocery store knowingly permitted fat meat and vegetables to remain on the steps of his store. A customer about to leave the store slipped on the refuse and was injured. A judgment against the proprietor for the injuries was sustained.

In *Klein v. Woolworth Co.*, 309 Pa. 320, the alleged negligence was the washing and oiling of the floor without "powdering" the oiled space to render it reasonably safe, and the court held that the question of negligence was for the jury.

The defendant leans on the cases of *Diver v. Singer Mfg. Co.*, 205 Pa. 170, and *Reay v. Montgomery-Ward*, 154 Pa. Superior Ct. 119, in its appeal, but so far as lending support to its contention is concerned, those cases stand on as slippery a foundation as the *Bowser* case—because their facts are different from those presented here. In the *Diver* case the floor on which the plaintiff came to grief had been oiled on a Saturday afternoon and it was then rubbed down carefully. When the store opened on the following Monday the floor was carefully examined and found to be hard and *dry*. In the *Reay* case there was no evidence as to the source of the greasy substance on which the plaintiff slipped, and the defendant had no actual or constructive knowledge of the oil and grease in the aisle. In the case at bar, on the contrary, as already specified, the floor had been oiled 2½ hours prior to the accident and the floor was *wet* with oil and wax at the point and at the time Mrs. Strout fell.

The defendant urges that, should it fail in its appeal for judgment n.o.v., this Court must order a new trial because of alleged trial errors. In cross-examining a defendant's witness, Stanley Tarr, plaintiff's counsel asked him his occupation and the witness replied that he was employed by the Liberty Mutual Insurance Company. The defendant moved for the withdrawal of a juror which the Court refused. We see no error in the Court's ruling. Considering the obvious magnitude of the defendant's operations it would make but little difference to the jury as to whether the defendant was protected against liability by insurance or whether it would have to pay directly the modest verdict which the jury awarded. At any rate, under the circumstances we do not find that plaintiff's counsel abused regularity of procedure in asking the witness his occupational background.

The defendant also complains that the judge should have withdrawn a juror when plaintiff's counsel said: "That is an unabashed fabrication of why lawyers are in Court." The defendant does not challenge the accuracy of the statement of plaintiff's counsel in his brief: "The remark in question was made by counsel after defendant's attorney in his own speech had told the jury that if plaintiff's claim were valid, he, personally, would not have defended the case." If defendant's counsel did make the remark attributed to him by plaintiff's counsel, and it is not denied, he was well repaid for his own brash observation. What was said in the case of *Freeman v. Wilkes-Barre & Wyoming Valley Traction Co.*, 36 Pa. Superior Ct. 166, could well apply here: "Injecting the personal experience of counsel as a standard of measurement of the conduct of the agent certainly was not allowable."

Nor do we find any error in the three excerpts from the Court's charge quoted by defendant's counsel in

their brief. The factual issue in the case was properly submitted to the jury and we see no reason to disturb the resulting verdict, reduced as it was by the Trial Court.

Judgment affirmed.

Mr. Justice BELL dissents.