Finney *v.* G. C. Murphy Company, Appellant.

Argued April 25, 1960.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

*John A. MacPhail*, with him *Brown, Swope and MacPhail*, for appellant.

*Arthur Berman*, with him *Eugene R. Hartman* and *Walter F. Miller*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 3, 1960:

Elizabeth M. Finney brought an action in trespass against G. C. Murphy Company alleging that on June 24, 1954, while in the defendant's store in Gettysburg, she slipped on an oily floor, fell and sustained serious injuries.  At the trial she testified that her foot came into contact with a pool of oil, causing her to skid and fall on her left hip.  She stated that when she rose from the floor she observed that the place where she fell was "heavily oiled" and that the spot measured approximately 21 inches in length and 11 inches in width.  She said also that her left stocking and slip were stained with a substance which, to her senses of sight and smell, seemed oil.

It appears that the defendant company applied to its floors once a week a product known as "Mycosheen". A witness, Julian Rudisill, sales representative for the company which manufactured and sold mycosheen, testified that this product contained no oil. He explained that it was made up of solvents and gums. He admitted, however, that his knowledge on the subject was not a personal one and was derived from others. Although the plaintiff objected that testimony of this character was incompetent as hearsay, the trial judge admitted it. The jury returned a verdict for the defendant.

The trial court then ordered a new trial, stating that it had erred in allowing Rudisill's testimony as indicated. The defendant has objected to the order. We find that it was entirely justified under the law and the facts in the case.

The plaintiff's whole case was based on the proposition that the defendant's floor was covered with an oily substance. The jury should not have been permitted to found its verdict, as it might well have done, on the incompetent testimony of Rudisill that mycosheen did not contain oil. Rudisill did not know of his own knowledge whether mycosheen contained oil or not.

The defendant argues that even if the question had been excluded, the plaintiff could still not have recovered because the jury found as a special finding of fact that there was no pool of mycosheen or any other substance on the floor. In fact, the defendant insists that it is entitled to judgment on the verdict because the plaintiff did not make out a case of negligence. But the plaintiff might well have made out a case of negligence to the satisfaction of the jury if the jury had known what was in mycosheen.

It was testified that mycosheen is of such an oily nature that after a single application of it, the mop

head with which it is applied must be discarded. If, in fact, mycosheen contains an oleaginous constituent of some kind, and it is shown that the floor was covered with this substance in such a way as to present danger to business visitors, a case of prima facie negligence would be made out requiring the defendant to answer.

In the case of *Strout v. American Stores Co.*, 385 Pa. 230, the plaintiff fell on an oily and gummy patch which was one-fourth of an inch thick. Allowing a recovery we said: "It needs little argumentation to convince the impartial mind that a one-fourth inch thickness of wax on a smooth surface can precipitate a pedestrian's fall as effectively as thrusting a loose roller skate under his striding feet."

What degree of care does a store owner owe the patrons of his establishment? This question was definitively answered with ample authority in the case of *Vetter v. Great A. & P. Co.*, 322 Pa. 449, 454, where we said: "Mr. Justice SIMPSON, in Nettis v. Gen. Tire Co., 317 Pa. 204, 209, said: 'All the authorities agree that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended . . .' (citing cases). To the same effect we recently held in Kulka v. Nemirovsky, 314 Pa. 134, 139: 'Defendant owed to the plaintiff the affirmative duty of keeping his premises reasonably safe for business visitors, such as plaintiff, and of giving warning of any failure to maintain them in that condition . . .' (citing cases)."

We affirm the order of the court below granting a new trial because of its failure to sustain the objection to Rudisill's testimony with regard to the constituency of mycosheen. We may add, however, that another

error was committed when the court allowed defendant's counsel to speak of indemnity insurance to the jury. Plaintiff's counsel states in his brief that during defendant's counsel's summation he told the jury that since there was insurance in the case, a false recovery without foundation would cause insurance premiums to rise and the cost of goods in the store to go up and that thereby the jurors would be the losers.

If this statement was made to the jury, it was entirely improper and a juror should have been withdrawn immediately upon its utterance. Any argument which seeks to make the jury or any juror a partisan in interest cannot be permitted. The whole purpose of a voir dire inquiry is to exclude veniremen who might have any interest in the outcome of the case on which they are to sit in judgment. A jury should be as neutral as a thermometer and as detached as an almanac. They should look at no party or witness in the light of how that party or witness might affect them personally.

To argue in such a manner as to give a juror the feeling that he stands to win or lose something personally on the verdict is to strike at the very foundation of our jury system which is built on the solid rock of undeviating impartiality and complete disinterestedness in the result. The argument of defendant's counsel that an adverse verdict would cause insurance premiums to rise and the cost of goods to go up would mean, if carried to its logical extreme, that a juror should at all times be reluctant to enter a verdict against any vendor of goods because in the ultimate analysis a money verdict against the vendor would be reflected in some way in the prices he charges the public for his goods. To throw over the jury an entangling net of self-interest would be to make a mockery of justice.

The order of the court below granting a new trial is affirmed.

Mr. Justice BENJAMIN R. JONES dissents and would enter judgment n.o.v.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent for each and all of the following reasons:

(1) Rudisill's testimony was properly admitted: *Commonwealth v. Blankenstein*, 81 Pa. Superior Ct. 340; but even if inadmissible, was harmless error. It was absolutely harmless because of the special finding of fact by the jury: "There was no pool of mycosheen *or any other substance on defendant's floor.*"

(2) There was an unbridgeable gulf between plaintiff's allegata and probata.

(3) There was no proof of knowledge by defendant of the alleged oil or any constructive notice.

(4) Defendant was entitled, under all the evidence, to a directed verdict in its favor.