Adams, Appellant, *v.* J. C. Penney Company.

654

Argued March 25, 1963. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*David E. Cohen,* with him *Thomas J. Kalman,* for appellant.

*Daniel W. MacDonald, Jr.,* for appellee.

Opinion by Mr. Justice Roberts, July 2, 1963:

Katharine Adams, appellant, filed a complaint in trespass against J. C. Penney Company, appellee, to recover damages for personal injuries sustained when she fell while descending a stairway from the first floor to the basement of defendant's premises located on Main Street in the City of Uniontown. On December 16, 1955, plaintiff, a widow 77 years of age, was shopping in defendant's department store when the accident occurred. At the conclusion of the testimony, defendant's motion for a directed verdict was sustained, and

plaintiff's motion for a new trial was refused. This appeal followed.

Giving the plaintiff the benefit of all evidence favorable to her, together with all reasonable inferences of fact arising therefrom, together with any conflict in the evidence *(Cattie v. Joseph P. Cattie & Brothers, Inc.,* 403 Pa. 161, 168 A. 2d 313 (1961)), the following facts are established:

Plaintiff was shopping in defendant's store for material for her nieces on the day of the accident. This was the first time in 15 years that plaintiff had been in the store. A portion of defendant's store was contained in the basement of the premises which could be reached by going down a flight of stairs consisting of 16 steps from the first floor. The stairs were approximately five feet wide, with treads eleven inches wide and risers seven inches high constructed of wood. A heavy metal strip, three and one-eighth inches wide, was recessed into the leading edge along the entire length of each step. There were hand rails on each side of the flight of steps and a sign was placed directly above the stairway, at eye level, stating "safety first—use hand rail."

The stairs were illuminated by means of a 300 watt globe suspended directly over the seventh step. At the top of the stairs a fluorescent light was installed, and at the bottom of the stairs, a globe and bulb suspended from the basement ceiling, directly over the foot of the steps, were installed. In addition, another bulb suspended from the basement ceiling, over the tenth step, illuminated the stairway. Plaintiff stated that it was dim lighting "like in the day time, when you have the lights on. It didn't show much light," but Mrs. Buchina, plaintiff's witness testified that it was not dark.

While holding onto the hand rail on the right side, plaintiff descended the stairway. When she reached

the fifth or sixth step from the basement floor, she felt her foot catch on the metal strip and she tripped and fell forward and down to the basement floor. At the time she tripped, her shoe came off and fell to the basement ahead of plaintiff. She fell on her right shoulder. She described her shoe as being "all scratched on the heel and on the side." She was unable to observe any defect on the stairs and stated she was careful. After being helped to her feet and resting for a short time, she ascended the stairway and noticed that the metal strip of the step was "higher from the main part of the step." When questioned further, she described the metal facing as being "about a quarter inch or so" higher.

Immediately after the accident, both the manager and assistant manager examined the steps and found nothing on them. When questioned about her fall, plaintiff stated to them that she was holding onto the hand rail and her hand slipped and she didn't know what happened after that.

Mrs. Buchina, plaintiff's niece and a frequent shopper in defendant's store, observed the steps two or three days before the accident and stated that she noticed the surface of the steps as being worn in spots, not only the first step but many of the steps and the metal edge of each step was slightly higher because the surface of the tread was worn below the metal edge. She again examined the steps two days after the accident and found the steps in the same condition. She described the strips, particularly the fifth or sixth step from the basement floor, as being about a quarter inch or so higher from the step itself.

As we said in *Vetter v. Great Atlantic & Pacific Tea Co.*, 322 Pa. 449, 454, 185 Atl. 613, 615 (1936): "Mr. Justice SIMPSON, in Nettis v. Gen. Tire Co., 317 Pa. 204, 209, said: 'All the authorities agree that it is incumbent upon the owner of premises upon which

persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended.' " Accord, *Strout v. American Stores Co.*, 385 Pa. 230, 122 A. 2d 797 (1956). Although the owner is not an insurer, he must give warning of any unsafe condition. *Schaff v. Meltzer*, 382 Pa. 43, 114 A. 2d 167 (1955); *Jerominski v. Fowler, Dick & Walker*, 372 Pa. 291, 93 A. 2d 433 (1953).

This record does not indicate that any unsafe condition existed either prior to or at the time of the accident. The mere fact that steps in a department store might be slightly worn or smooth, of itself is not negligence, nor is the mere happening of an accident evidence of negligence. The burden rests upon the plaintiff to produce evidence from which a reasonable inference arises that the defendant was negligent and that such negligence was the proximate cause of the accident. *Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 186 A. 2d 897 (1962).

All that was shown here indicated a normal wearing of the steps on the stairway. There was no evidence that any of the metal strips or facings were raised or bent up, or that any of the screws fastening them down were missing. There was no evidence to indicate that these facings were improperly affixed even though the edges thereof may have been slightly higher than the rest of the tread. The material from which the steps were constructed was reasonably suitable for the purpose and in common use. To hold a store owner liable because his steps are slightly worn would render such owner practically an insurer of the safety of his customers. A finding of negligence, under the instant facts and circumstances, would be supported by nothing more than conjecture.

In *Radies v. Reading Liederkranz German Singing and Sport Society*, 197 Pa. Superior Ct. 509, 178 A. 2d

789 (1962), the steps in question were worn down three-eights of an inch and were smooth. In affirming judgment n.o.v., the court held this condition, without more, not to be negligence. In *Chapman v. Clothier*, 274 Pa. 394, 118 Atl. 356 (1922), this Court ruled that a depression of one-sixteenth inch in the tread of marble steps did not constitute a defective condition. In *Copelan v. Stanley Company of America*, 142 Pa. Superior Ct. 603, 17 A. 2d 659 (1941), it was decided that terrazzo steps which were worn smooth and sloping did not in itself convict a theatre operator of culpable negligence.

Appellant relies on a number of cases involving foreign substances or obstructions to sustain her position. Those cases are not applicable here. Reliance is also placed on *Stais v. Sears-Roebuck and Company*, 174 Pa. Superior Ct. 498, 102 A. 2d 204 (1954). That case is clearly distinguishable from the instant case. There, plaintiff fell after tripping over a loose metal strip on the edge of the landing. The heel of her shoe caught and momentarily hung in the metal strip and the heel tab of the right shoe was torn off. An examination of the metal strip there disclosed that it was, in fact, loose and sticking up and that the screws were missing. No such factual setting is here presented.

Appellant contends that her cause comes within the class of cases where the tread of a step has become so defective that the dangerous condition should have been discovered by proper inspection.

The record here, however, fails to establish the existence of any unsafe or dangerous condition in the stairway. In the absence of such evidence, the court below properly directed a verdict for the defendant. That action should not be disturbed.

Judgment affirmed.

Mr. Justice MUSMANNO and Mr. Justice O'BRIEN dissent.

DISSENTING OPINION BY MR. JUSTICE EAGEN:

The majority opinion clearly misses the point in this case.

This is not the situation wherein an invitee falls and is injured on the step of a staircase in a commercial establishment that is slightly uneven due to wear and tear. If such were the facts, proof of negligence would be absent and the entry of a directed verdict proper. However, the proof and facts herein manifest much more than that. The instant plaintiff fell, not because the step was merely worn. She fell because of the existence of a trap on the stairway caused by the combination of a depression in the wooden portion of the step plus a metal strip which extended above the depression for approximately one-quarter of an inch. Such a condition was unreasonable, dangerous and should not be permitted to exist in a business place where the customers have every right to expect reasonably safe conditions.

The majority opinion cites the cases of *Radies v. Reading Liederkranz German Singing and Sport Society*, 197 Pa. Superior Ct. 509, 178 A. 2d 789 (1962); *Chapman v. Clothier*, 274 Pa. 394, 118 A. 356 (1922) and *Copelan v. Stanley Company of America*, 142 Pa. Superior Ct. 603, 17 A. 2d 659 (1941), in support of its conclusion that no negligence is present in the instant case. In these cases the steps were worn but no part of the step was protruding as in the instant case. In the case of *Stais v. Sears-Roebuck and Company*, 378 Pa. 289, 106 A. 2d 216 (1954), this Court sustained a verdict and judgment in favor of the plaintiff, involving a factual situation wherein the metal strips on the step were "flat and flush-down." However, the strip was not screwed down and thus protruded when the plaintiff stepped on it. Chief Justice BELL, in his dissenting opinion in the *Sears* case, pointed out that there was "no evidence that it was worn."

Herein the tread was worn one-quarter of an inch or more. This may very well be "normal wearing of the steps on the stairway" as stated by the majority opinion but many very dangerous conditions result from normal wearing. The question is not whether the condition exists because of normal wearing but whether the store owner has satisfied the duty he owes to his customers to exercise reasonable care for their safety.

I would reverse.