**[J-66-2017][M.O. – Donohue, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | |
|---|---|
| JOISSE A. CAGEY AND DALE J. CAGEY, HER HUSBAND, | : No. 36 WAP 2016 |
| | : |
| | : Appeal from the Order of the |
| | : Commonwealth Court entered on |
| Appellants | : 7/28/16 at No. 2650 CD 2015 affirming |
| | : the Order of the Court of Common |
| | : Pleas of Beaver County entered on |
| | : 12/4/15 at No. 10716 of 2015 |
| v. | : |
| | : |
| COMMONWEALTH OF PENNSYLVANIA, | : |
| DEPARTMENT OF TRANSPORTATION, | : |
| A COMMONWEALTH AGENCY, | : |
| | : |
| Appellee | : ARGUED: October 17, 2017 |

**_CONCURRING OPINION_**

**CHIEF JUSTICE SAYLOR**                    **DECIDED: FEBRUARY 21, 2018**

I join the majority opinion. I acknowledge that I supported the *per curiam* Order in *Baer v. PennDOT*, 564 Pa. 603, 770 A.2d 287 (2001), which applied the decision in *Dean v. PennDOT*, 561 Pa. 503, 751 A.2d 1130 (2000), in circumstances involving alleged negligence in the design, construction, and maintenance of guardrails. The majority has persuaded me, nonetheless, that the outcome of *Baer* is undermined by a conventional fixtures analysis.

I wish to also touch briefly on the substantive liability standard involved. In this regard, I observe that the decision in *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), cited by the majority, omitted reference to a reasonableness factor in discussing PennDOT's liability relative to an allegedly defective condition associated with real

estate under the Commonwealth's control. *See id.* at 435, 562 A.2d at 312 ("The corresponding duty of care a Commonwealth agency owes to those using its real estate, is such as to require that the condition of the property is *safe* for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." (emphasis added)).

In Pennsylvania, however, the notion of safety in the abstract was associated with jury instructions in the strict liability arena, whereas the litmus in the negligence arena is *reasonable* care and safety. *Compare Tincher v. Omega Flex Inc.,* 628 Pa. 296, 363, 104 A.3d 328, 368 (2014) (noting that, with respect to strict product liability claims, the question presented to a jury was whether the product lacks any element necessary to make it *safe* for its intended use) (emphasis added), *with Adams v. J.C. Penny Co.*, 411 Pa. 653, 656-57, 192 A.2d 218, 219 (1963) (indicating that property owners have a duty to invitees to maintain the premises in a *reasonably safe* condition for its contemplated use) (emphasis added)).[1] The reasonableness dynamic accounts for cost-benefit considerations which, here, are quite salient to the Commonwealth given the scale of its responsibilities relative to a vast collection of public roads and highways.

I note that *Snyder*, like the present case, concerned sovereign immunity and was not closely focused on the underlying substantive liability standards. Moreover,

---

[1] Notably, the General Assembly has not waived immunity for strict liability claims. *See Jones v. SEPTA*, 565 Pa. 211, 217 n.1, 772 A.2d 435, 439 n.1 (2001) (citing 1 Pa.C.S. §2310) (indicating that the Commonwealth shall enjoy sovereign immunity and remain immune from suit except as the General Assembly specifically waives immunity)); 42 Pa.C.S. §8522(a) (indicating that the General Assembly waives sovereign immunity for damages arising out of negligent acts only); *accord Rooney v. City of Phila.*, 623 F. Supp. 2d 644, 662 (E.D.Pa. 2009) (holding that a local government was immune from plaintiffs' strict liability claims because, in Pennsylvania, exceptions to governmental immunity are limited to claims of negligence).

*Snyder*'s depiction of the safety standard untethered by reasonableness is inconsistent with a wide range of decisional law. *See, e.g.*, *McKenzie v. Cost Bros., Inc.*, 487 Pa. 303, 309, 409 A.2d 362, 365 (1979) (reiterating the general rule that a possessor of land has a duty to use reasonable care to make the premises reasonably safe for invitees); *Miller v. Hickey*, 368 Pa. 317, 324, 81 A.2d 910, 914 (1951) (noting that a landowner is not charged with the absolute duty of keeping his premises in a safe condition, but rather, is responsible for correcting known defects and ensuring that the property is reasonably safe for invitees); *accord* RESTATEMENT (SECOND) OF TORTS, §343(c)(i) (1965), Comment d.

While the distinction between "safety" and "reasonable safety" may seem to be modest in a colloquial sense, it is quite significant as a matter of substantive law. Indeed, the difference heralded a period of great uncertainty in Pennsylvania in the product liability context. *See Tincher*, 628 Pa. at 375-84, 104 A.3d at 376-81. It is important, as well, to recognize that guardrails themselves may pose inherent risks to the traveling public in some circumstances. *See, e.g., Estate of Gage v. State*, 882 A.2d 1157, 1160 (Vt. 2005). Accordingly, other jurisdictions have held that the government's duty is to construct and maintain its highways and shoulders -- including guardrails -- in a reasonably safe manner, again, balancing a range of relevant factors. *See Helton v. Knox County*, 922 S.W.2d 877, 883 (Tenn. 1996) (holding that, while the standard of care imposed on governments in building and maintaining roads and bridges is one of reasonableness, it is not its duty to maintain guardrails of sufficient strength to prevent all accidents); *see also Louisville Gas and Elec. Co. v. Roberson*, 212 S.W.3d 107, 109 (Ky. 2006).[2]

---

[2] There is, of course, the nuance that governments are often not the designers of products integrated into highway system infrastructures, such as guardrails, but rather, acquire such products through the procurement system. Such additional complexities (continued…)

Finally, there remains a concern with cost-benefit decisions of government being decided, or second guessed, in jury rooms. In this regard, I note that a number of other jurisdictions apply a discretionary-functions overlay to highway system design and/or maintenance, extending immunity to discretionary decision-making endeavors. *See, e.g., Kirby v. Macon County*, 892 S.W.2d 403, 407-409 (Tenn. 1994); *Keegan v. State*, 896 P.2d 618, 623-25 (Utah 1995); *Hennes v. Patterson*, 443 N.W.2d 198, 202 (Minn. 1989); *City of Jackson v. Brown*, 729 So.2d 1231, 1235 (Miss. 1998); *Patrazza v. Commonwealth*, 497 N.E.2d 271, 273 (Mass. 1986). The Pennsylvania General Assembly, however, has not specifically insulated discretionary functions as such from the effect of the immunity exceptions, leaving this Court to implement the series of discretely-defined exceptions on their prescribed terms (subject to the strict construction overlay).[3] Accordingly, while I have some reservations about the policy implications of this case, I agree with the majority that the result is appropriately tethered to the terms of the immunity statute.

---

(…continued)

may also be relevant to the liability assessment in this arena, and, again, because liability is not sharply in focus here, I would refrain from making specific pronouncements.

[3] This is not to say that the discretionary-functions dynamic might not, in some circumstances, be relevant within the framework of a strict construction analysis. No such arguments are presented here, however, and thus I will refrain from further comment along these lines as well.