NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1156
_____

NAOMI SPEAKS,
Appellant

v.

UNITED STATES OF AMERICA; ELWYN INDUSTRIES, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:23-cv-00487)
District Judge:  Honorable Gerald A. McHugh
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 12, 2025

Before:  KRAUSE, PHIPPS, and FISHER, *Circuit Judges*.

(Filed: February 3, 2026)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Plaintiff Naomi Speaks suffered significant injuries when she fell in a stairwell at the United States Custom House in Philadelphia, where she worked as a security contractor. She sued the United States, which owns the building, and Elwyn Industries, Inc., which provides janitorial services there, for negligence. The District Court granted summary judgment for the defendants. Speaks appeals. We will affirm.[1]

"In order to survive a summary judgment challenge, a plaintiff must prove that a genuine issue of material fact could be presented at trial, such that a reasonable jury could return a verdict for the plaintiff on that issue."[2] A plaintiff must establish negligence by showing "(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage."[3]

The United States, as the landowner, had a duty to protect business invitees—including its contractors' employees—from conditions creating an unreasonable risk of harm.[4] Speaks argues the United States breached its duty because the stairs were wet and

---

[1] The District Court had jurisdiction over the claim against the United States under 28 U.S.C. § 1346(b)(1) (tort claims against the United States), and over the claim against Elwyn under 28 U.S.C. § 1367(a) (supplemental jurisdiction). We have jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts). We review de novo a district court's grant of summary judgment. *DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 (3d Cir. 2007).

[2] *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 748 (3d Cir. 1996).

[3] *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1272–73 (Pa. 2006). Pennsylvania law controls because, under the Federal Tort Claims Act, liability is determined based on "the law of the place where the [allegedly wrongful] act or omission occurred." 28 U.S.C. § 1346(b)(1).

[4] *Farabaugh*, 911 A.2d at 1272 & n.10.

worn, making them slippery and dangerous. However, the record would not permit a factfinder to conclude the steps were wet or were sufficiently worn to be hazardous.

Speaks's accident occurred on January 18, 2022. The day before, 0.62 inches of precipitation fell in Philadelphia, but only a "trace of snow," and temperatures were between 35 and 51 degrees.[5] The day of the accident was colder, 31 to 41 degrees, and there was no precipitation. Although Speaks saw snow on vehicles in the parking lot, she did not recall whether the sidewalk leading to the Custom House door was wet or dry. In the two hours between the 6 a.m. start of her shift and when she fell, about ten to fifteen people went through the entrance door. Based on this record, it is unreasonable to infer that people tracked enough snow or water into the building to saturate the walk-off mat and create dangerous wetness on the stairs.

In addition, Speaks did not testify at her deposition that the stairs were wet; in fact, she did not "notice anything different about the stairs" that morning.[6] When she fell, she landed on her hands and knees on the mat inside the door and observed it was wet, making her knees wet. But she did not "perceive wet[ness] anywhere other than the mat[.]"[7] In other words, the record shows the mat worked as intended—"to catch the water and to help give you traction when you first walk in the building."[8] On the day of

---

[5] App. 400.
[6] App. 448.
[7] App. 449.
[8] App. 386.

the accident, in both her text message to her supervisor and the incident report required by her employer, Speaks did not refer to wetness or say she slipped. Rather, she reported that she "tripped."[9] And, finally, no one called Elwyn that day to report wet floors or stairs in the building. So, drawing all reasonable inferences in Speaks's favor,[10] a jury could not conclude the stairs were wet.

The record similarly would not permit a jury to find that the steps were worn enough to be dangerous. Speaks's expert conclusorily referred to "worn and deteriorated stair treads with burnished metal nosing."[11] But the expert did not provide measurements to quantify deterioration. And "[t]he mere fact that steps . . . might be slightly worn or smooth, of itself is not negligence."[12] An objective defect, such as a nosing missing screws and "sticking up" from a step, breaches a duty.[13] However, "vague and indefinite" testimony that a step is "worn badly" does not show a breach.[14] Nor does the fact that a building may be old, as the 1933 Custom House is: where a stairway is "not obviously dangerous, has been in daily use for years, . . . and has uniformly been safe, its use may be continued without the imputation of culpable imprudence and carelessness."[15]

---

[9] App. 351, 395.

[10] *Ideal Dairy*, 90 F.3d at 743.

[11] App. 404.

[12] *Adams v. J. C. Penney Co.*, 192 A.2d 218, 220 (Pa. 1963).

[13] *Stais v. Sears, Roebuck & Co.*, 102 A.2d 204, 205 (Pa. Super. Ct. 1954).

[14] *Copelan v. Stanley Co. of Am.*, 17 A.2d 659, 660–61 (Pa. Super. Ct. 1941) (reversing jury verdict for plaintiff and directing entry of verdict for defendant).

[15] *Id.* at 661 (citation omitted).

In sum, the record does not permit an inference that the steps were dangerously wet, dangerously worn, or—in combination—dangerously wet and worn. Therefore, the United States did not breach its duty to prevent an unreasonable risk of harm.

Elwyn, the other defendant, had a duty of care imposed by both the law of negligence and by its contract.[16] The District Court held that Elwyn had a legal duty to "carry out its janitorial services without negligence and to address dangerous conditions discoverable by reasonable inspection."[17] Elwyn's contractual duties included cleaning stairwells and floors, mopping up water, and maintaining floor mats during inclement weather. Because the record reveals no factual dispute that the stairwell was wet or otherwise unsafe, Elwyn did not breach a duty.

"The mere fact an accident occurred does not entitle the injured person to a verdict. A plaintiff must show that a defendant owed a duty of care, and that this duty was breached."[18] Speaks suffered serious and unfortunate injuries. But the record would not permit a reasonable jury to conclude that the defendants breached a duty of care they owed her. We will therefore affirm.

---

[16] *Prost v. Caldwell Store, Inc.*, 187 A.2d 273, 277 (Pa. 1963).

[17] App. 11–12; *Bisson v. John B. Kelly, Inc.*, 170 A. 139, 143 (Pa. 1934) ("It is a primary social duty of every person to take thought and have a care lest his action result injuries to others.").

[18] *Gutteridge v. A.P. Green Servs., Inc.*, 804 A.2d 643, 655 (Pa. Super. Ct. 2002).