Bernadette E. SLUSSER and PNC Bank, NA, as Co–Executors of the Estate of Thomas A. Slusser, Deceased, Earl R. Slusser, Matthew B. Bayzick and Thomas J. Slusser,

v.

LAPUTKA, BAYLESS, ECKER AND COHN, P.C. and Martin D. Cohn, Esquire.

Appeal of Martin D. Cohn, Esquire, Appellant

Bernadette E. Slusser and PNC Bank, NA, as Co–Executors of the Estate of Thomas A. Slusser, Deceased, Earl R. Slusser, Matthew B. Bayzick and Thomas J. Slusser,

v.

Laputka, Bayless, Ecker and Cohn, P.C. and Martin D. Cohn, Esquire.

Appeal of Laputka, Bayless, Ecker & Cohn, P.C., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 22, 2010.
Filed Nov. 29, 2010.

Jeffrey B. McCarron, Philadelphia, for Cohn.

Stephen A. Seach, Drums, for Slusser.

BEFORE: ALLEN, MUNDY and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

This matter presents the Court with consolidated appeals from a judgment entered against Appellants and in favor of Appellees. The parties also have filed a number of motions which we must resolve. We deny the parties' motions, vacate the judgment and all of the orders entered by former Luzerne County Judge Mark A. Ciavarella ("Ciavarella"), and remand for a new trial.

While the certified record in this matter is voluminous, we offer the following, relatively brief summary of the background underlying this matter. Appellees filed a complaint against Appellants. The complaint sounded in legal malpractice and contained counts of negligence, breach of contract, breach of fiduciary duty, and detrimental reliance. Robert J. Powell ("Powell") and Jill Moran ("Moran") signed Appellees' complaint as counsel. The case was assigned to Ciavarella.

After pre-trial procedures were resolved, the matter was set for trial. Appellees' counsel during trial were Powell, Stephen A. Seach ("Seach"), and Jonathan Lang. Prior to the trial, Seach indicated on the record that the matter had been "bifurcated." N.T., 01/22–23/08, at 70–71. A jury would hear the negligence, breach of contract, and breach of fiduciary duty claims; the detrimental reliance claims would be heard sometime after the jury trial. *Id.*

* Retired Senior Judge assigned to the Superior Court.

Subsequent to the conversation regarding the bifurcation of the trial, the following exchange took place between Appellants' counsel and Ciavarella.

[Counsel]: Your Honor, I have two issues to raise, if I may. One is, apparently there's been some considerable publicity involving Your Honor and also Mr. Powell, and I guess there's other information that suggests that—I just want to ask about whether there's a relationship between you and Mr. Powell which would present an issue to the fairness of the trial in this case by my clients. That's all.

[Ciavarella]: What significant publicity has there been concerning me and Mr. Powell?

[Counsel]: I understand there was something to do with a certain building for the county.

In any event, I'm just asking the question whether there is a relationship between you and Mr. Powell which would present an issue about Your Honor sitting as the judge for this case.

[Ciavarella]: Based on what?

[Counsel]: I'm asking.

[Ciavarella]: I'm asking you, based on what?

[Counsel]: I'm sorry, I'm asking the Court whether there's an issue.

[Ciavarella]: And I want to know what you're basing that on.

[Counsel]: The question?

[Ciavarella]: Yes.

[Counsel]: I'm just basing it on—

[Ciavarella]: Do you ask everybody judge [sic] that question—

[Counsel]: No, I don't.

[Ciavarella]: —that you appear in front of?

[Counsel]: Judge, if the answer is by Your Honor—I'm just asking the question.

[Ciavarella]: I want to know why you're asking that question.

[Counsel]: Because I thought to ask it. I thought to ask it.

[Ciavarella]: Anything else?

[Counsel]: There's—can I—I'm raising the issue.

[Ciavarella]: Unless you want to give me a basis for that question, I don't see why it's even asked.

[Counsel]: It's asked because I just want to be cautious about the situation. That's all.

[Ciavarella]: What situation?

[Counsel]: I just want to be cautious because it's been mentioned to me a number of times.

[Ciavarella]: By whom?

[Counsel]: Well, they're privileged discussions. But it's been brought—and by other lawyers. That's all. I'm just asking the question. If there's not an issue—

[Ciavarella]: What relationship?

[Counsel]: I'm sorry. Your Honor, I don't—I'm asking the question. If there's been—

[Ciavarella]: And now I'm asking the question.

[Counsel]: I don't have details [if] that's what you're looking for.

[Ciavarella]: Well, then, why ask the question?

[Counsel]: I'm just inquiring whether there is.

[Ciavarella]: Anything else?

[Counsel]: Well—

[Ciavarella]: I don't have to answer that question based upon that. Why should I answer that question based upon that?

You want to present something to me, present it, and I'll be glad to answer.

[Counsel]: No, Your Honor. I believe I was—I have an obligation just to raise the issue, or at least that's the way I feel with respect to my clients.

[Ciavarella]: If you want to be specific, I can answer it. If you want to be specific about what relationship you're referring to, I'll be glad to answer it.

[Counsel]: Obviously any relationship which would impact or interfere with or create the appearance that there's an issue about Your Honor's ability to sit and fairly judge the case.

[Ciavarella]: There is none.

[Counsel]: Okay.

[Ciavarella]: Anything else?

[Counsel]: And the reason, in particular, is because the idea that there may have been leisure activities in which the two of you have been engaged or other matters and that's all.

[Ciavarella]: Leisure activities.

[Counsel]: Vacations or something similar.

[Ciavarella]: I have never been on a vacation with Mr. Powell. I've never been on a vacation with anyone from his family. I may have socialized with Mr. Powell, like I have socialized with other lawyers, at various events.

*Id.* at 72–76. Ciavarella later stated for the record that he has a social relationship with several attorneys in Appellants' law firm.

On February 4, 2008, the jury returned a verdict in favor of Appellees in the amount of $3,411,141.00. On February 7, 2008, Appellees filed a letter in the trial court. In this letter, Appellees reminded the court that their detrimental reliance claims were deferred for a bench trial and that Appellees wished to proceed on the claims. Appellees requested a pre-trial conference to schedule the bench trial and to discuss the evidence the parties intended to introduce at the trial.

Appellants timely filed a motion for post-trial relief on February 14, 2008. Nearly a month later, Appellants filed a supplement to their motion for post-trial relief. In this supplement, Appellants claimed that Ciavarella had a bias in favor of Appellees and against Appellants.

On July 3, 2008, Appellants filed a "second supplement" to their motion for post-trial relief. Appellants recounted the pre-trial exchange between their attorney and Ciavarella. Appellants then made the following averments:

4. According to an article published by the Citizens Voice on May 29, 2008, Judge Ciavarella has a financial interest in W–Cat Inc. which is reportedly building a multi-million dollar, 86 unit townhouse development in Wright Township, Luzerne County Pennsylvania....

5. According to the article, Judge Ciavarella is a guarantor for a loan to W–Cat, Inc. ...

6. According to the article, the president, treasurer and secretary of W–Cat, Inc. is Jill Moran, a principal in Robert Powell's law firm....

7. Moran, along with Powell, signed the complaint in this matter.

8. Moran is the prothonotary of the Luzerne County Court of Common Pleas.

9. According to the article, the documents filed with Luzerne County indicate that Robert Powell is the co-owner of W–Cat, Inc. ...

10. According to the article, a project narrative statement with the Luzerne County Planning Commission indicates that the shareholders of W–Cat, Inc. are [Appellees'] counsel, Robert J. Powell

and Jill Moran, a member of Powell's law firm. . . .

11. In the Statement of Financial Interest filed by Judge Ciavarella for the calendar year 2007, Judge Ciavarella disclosed his interest in W–Cat, Inc. as a financial interest in a legal entity in business for profit. . . .

12. Assuming the Citizens Voice article is accurate, Judge Ciavarella was and is in business with principals of the Powell Law Group, Jill Moran and Robert Powell.

13. Judge Ciavarella did not disclose this relationship when asked by defense counsel. . . .

Second Supplement to Appellants' Motion for Post–Trial Relief, 06/03/08, at ¶¶ 4–13. Appellants maintained that Ciavarella's ongoing business relationship with Appellees' counsel, at a minimum, created the appearance of bias and that Ciavarella, therefore, should have recused himself from presiding over the case.

Appellants then filed a motion for recusal, citing the circumstances outlined in their second supplement to their motion for post-trial relief. This motion is date-stamped as filed on June 17, 2008; however, Appellants insist that they filed the motion of June 16, 2008. Appellants appear to be correct because Ciavarella granted the motion on June 16, 2008. In the order granting the motion to recuse, Ciavarella directed the Luzerne County Court Administrator to assign the case to another judge to rule on Appellants' post-trial motions.

On the same day that Ciavarella granted Appellants' motion to recuse, Appellees filed a "Praecipe for Judgment Pursuant to Rule 227.4." The prothonotary, *i.e.*, Moran, entered a judgment which reflected the jury's verdict.

On June 30, 2008, Appellants filed an "Emergency Petition to Open and/or Strike Judgment." In this petition, Appellants took the position that, because Appellees' claims of detrimental reliance were still pending, Appellees' praecipe for the entry of judgment and the prothonotary's entry of judgment were premature.

Thereafter, Senior Judge Charles C. Brown, Jr. was specially appointed to preside over the matter. On July 14, 2008, Judge Brown struck the judgment due, in part, to the pending detrimental reliance claims.

On August 29, 2008, Appellees filed a praecipe to discontinue their detrimental reliance claims. The prothonotary marked the claims as discontinued. On the same day, Appellees again filed a "Praecipe for Judgment Pursuant to Rule 227.4," and the prothonotary entered judgment. Appellants responded by filing an emergency petition to strike the discontinuance and the judgment; Judge Brown denied the petition. Appellants filed notices of appeal on September 26, 2008.[1]

1. After they filed their appeal in this Court, Appellants apparently filed an Application for Extraordinary Relief in our Supreme Court. On May 26, 2010, the Supreme Court entered the following *per curiam* order:

 **AND NOW,** this 26th day of May, 2010, this Court recognizes that the judicial corruption issues raised by Petitioners are significant ones, as this case was tried before Mark A. Ciavarella, the plaintiffs were represented by Robert Powell, questions regarding the relationship between Ciavarella and Powell were specifically raised by Petitioners but were deflected by Ciavarella, and a significant jury award ultimately was entered. Petitioners' appeal, however, is pending before the Superior Court. That court can ably perform the function of being the initial appellate body to review this matter. Accordingly, the Application for Extraordinary Relief is **DENIED, WITHOUT PREJUDICE** to renew these issues, if necessary, following the Superior Court's disposition of the pending appeal.

In their brief to this Court, Appellants ask that we consider seven issues. We, however, will first address Appellees' contention that Appellants untimely filed their notices of appeal, thus depriving this Court of jurisdiction to consider the merits of Appellants' various issues.

Appellees contend that a judgment entered pursuant to Pa.R.C.P. 227.4(1)(b) is final as to all parties and all issues and, thus, is immediately appealable. Appellees highlight that such a judgment is not subject to reconsideration or any other motion to strike, open, or vacate. Appellees assert that the entry of judgment on June 16, 2008, extinguished their detrimental reliance claims. According to Appellants, Judge Brown's order striking the judgment is a legal nullity. Thus, because Appellants did not file their notices of appeal within thirty days of the entry of June 16, 2008, judgment, this Court must quash Appellants' untimely appeals.

 "In this Commonwealth, there are few legal principles as well settled as that an appeal lies only from a final order, unless otherwise permitted by rule or by statute." *McCutcheon v. Philadelphia Electric Company,* 567 Pa. 470, 788 A.2d 345, 349 (2002). As this Court recently explained:

> The key inquiry in any determination of finality is whether there is an outstanding claim. If any claim remains outstanding and has not been disposed of by the trial court, then it does not matter whether the claim is classified as a counterclaim or a bifurcated claim, for the result is the same: this Court lacks jurisdiction to entertain the appeal un-

less the appeal is interlocutory or we grant permission to appeal.

*Levitt v. Patrick,* 976 A.2d 581, 588 (Pa.Super.2009) (citations omitted).

Pennsylvania Rule of Appellate Procedure 227.4(1)(b) provides as follows:

> In addition to the provisions of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party and except as otherwise provided by Rule 1042.72(e)(3), the prothonotary shall, upon praecipe of a party:
>
> > (1) enter judgment upon a nonsuit by the court, the verdict of a jury or the decision of a judge following a trial without jury, if
>
> * * * * * *
>
> > (b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration[.]

Pa.R.C.P. 227.4(1)(b).

On June 16, 2008, one hundred and twenty days had passed since Appellants filed their post trial motions. However, Appellees' detrimental reliance claims, *i.e.,* the bifurcated claims,[2] were still pending in the trial court. Thus, the entirety of Appellees' claims had not been disposed of by "nonsuit by the court, the verdict of a jury or the decision of a judge following a trial without a jury[.]" Pa.R.C.P. 227.4(1). Appellees' praecipe to enter judgment,

---

*Slusser et al. v. Laputka, Bayless, Ecker and Cohen, P.C. et al.,* 2010 Pa. LEXIS 1134.

**2.** Just prior to trial, Appellees' counsel characterized this matter as having been "bifur-

cated." N.T., 01/22–23/08, at 70–71. This Court has recognized the bifurcation of law and equity causes of action. *See, e.g., Botsford v. Dugan,* 758 A.2d 667 (Pa.Super.2000).

therefore, was premature, and the prothonotary was without the authority to enter the judgment. Consequently, if Appellants would have appealed from the June 16, 2008, judgment, we would have quashed the appeals. *Cf. McCutcheon,* 788 A.2d at 350 n. 8 (explaining that decisions that follow the initial trial in a bifurcated matter do not take on the characteristics of a final, appealable order).

When Appellees discontinued their detrimental reliance claims on August 29, 2008, that discontinuance constituted a final judgment as to those claims. *See Levitt,* 976 A.2d at 588 ("The discontinuance constitutes a final judgment as a matter of law."). At that point, Appellants' post-trial motions remained unresolved. Appellees chose to file another praecipe to enter judgment pursuant to Pa.R.C.P. 227.4, and the prothonotary entered such a judgment. Because a jury verdict had been entered, one hundred and twenty days had passed since Appellants filed their post-trial motions, and no other claims were pending in the trial court, the entry of judgment on August 29, 2008, was proper. Appellants timely filed notices of appeal from the August 29, 2008, judgment; accordingly, our jurisdiction over this matter is secure. For these reasons, we deny Appellees' motion to quash this appeal. We now will turn our attention Appellants' first issue.

■ Appellants contend that, in addition to their aforementioned business relationship, Ciavarella and Powell had an extensive, criminal relationship. According to Appellants, this relationship led to criminal indictments being filed against Ciavarella and Powell. Appellants argue that this relationship, at the very least, tainted the proceedings held in the trial court with the appearance of impropriety. On the one hand, Appellants advocate that we should vacate the judgment and all orders issued by Ciavarella. On the other hand, Appellants ask this Court to remand the matter to the trial court in order to allow them to make a record of the improper nature of Ciavarella and Powell's relationship.

As an initial matter, we deny Appellants' multiple applications for a remand. It is unnecessary to establish a record of the improper nature of Ciavarella and Powell's relationship. The improper nature of their relationship has been established as a matter of law. In making this determination, we rely upon our Supreme Court's decision in *Joseph v. The Scranton Times L.P.,* 604 Pa. 677, 987 A.2d 633 (2009) ("*Joseph II* ").

The plaintiffs in *Joseph* filed a defamation action against the defendant newspaper. The matter was tried before Ciavarella. After a non-jury trial, Ciavarella issued a verdict of $3.5 million in favor of the plaintiffs, and a judgment subsequently was entered. This Court affirmed the judgment. *Joseph v. The Scranton Times L.P.,* 959 A.2d 322 (Pa.Super.2008).

Thereafter, our Supreme Court assumed plenary jurisdiction over the case. The Supreme Court specially appointed President Judge William Platt to preside over a remand of the case. Judge Platt was charged with the duty of determining whether a new trial was warranted due to judicial impropriety on the part of Ciavarella. After hearing evidence from the parties, including Ciavarella's testimony, Judge Platt recommended that a new trial was in order.

The Supreme Court accepted Judge Platt's recommendation. In doing so, the Court made the following observations with respect to Ciavarella and Powell's relationship:

Ciavarella, however, did testify under oath at the hearing before President Judge Platt. Ciavarella detailed the conduct he and [former Luzerne County

Judge Michael T.] Conahan engaged in regarding the monetary payments they both had received from Robert Powell, Esq., a local lawyer who routinely appeared before them, in connection with the construction of two private juvenile detention facilities. Even accepting as true the obviously self-serving characterizations in Ciavarella's testimony, his account, at a minimum, showed that the relationship of those two former judges had an apparent central, criminal conspiratorial facet. Ciavarella also admitted that he intentionally did not reveal to any litigants appearing before him that he and Conahan were engaged in this highly lucrative, highly unethical, and apparently illegal venture, nor did he reveal his substantial financial connection to Powell, even in cases where Powell appeared in front of him. Ciavarella thus ensured that litigants who would have had a strong and obvious reason to seek his recusal would not learn of the facts that would occasion the motion. In short, Ciavarella was acutely aware of his compromised position as a judicial officer, and deliberately responded only by taking affirmative steps to cover his tracks, elevating his self-interest over his core judicial obligations.

*Joseph II*, 987 A.2d at 636.

The relationship described by the Supreme Court tainted the instant trial court proceedings with the appearance of judicial impropriety. Appellants' counsel gave Ciavarella the opportunity to disclose this relationship and recuse himself from the proceedings. Rather than taking such steps, Ciavarella chastised counsel for raising the possibility of an improper relationship and deflected counsel's questions. All the while, Powell stood by as a silent observer.

Appellants eventually obtained specific information upon which they based a mo-

tion to recuse, and Ciavarella granted the motion. However, by that point, a trial had occurred and a verdict had been reached. Ciavarella's tardy and reluctant recognition of the appearance of impropriety cannot erase the specter of unfairness that looms over the results of the trial.

■ "A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings. A trial judge should not only avoid impropriety but must also avoid the appearance of impropriety." *In Interest of McFall*, 533 Pa. 24, 617 A.2d 707, 714 (1992). Here, Ciavarella did not avoid impropriety, let alone the appearance thereof. Consequently, Appellants are entitled to have this matter tried anew. Our determination in this regard renders consideration of Appellants' remaining issues unnecessary.

Judgment and all orders vacated. Appellants' and Appellees' motions denied. Case remanded to the trial court for a new trial. Jurisdiction relinquished.