J-A05038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DARLENE MCCAFFERTY AND RICHARD MCCAFFERTY, HUSBAND AND WIFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| SEVEN OAKS COUNTRY CLUB, INC., | |
| Appellant | No. 1103 WDA 2016 |

Appeal from the Judgment Entered August 22, 2016
In the Court of Common Pleas of Beaver County
Civil Division at No(s): 10313-2015

BEFORE:  BENDER, P.J.E., SHOGAN, J. and MOULTON, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 23, 2017**

Appellant, Seven Oaks Country Club, Inc. (referred to herein as "Seven Oaks"), appeals from the judgment entered on August 22, 2016, in favor of Appellees, Darlene and Richard McCafferty, in this negligence action that arose when Mrs. McCafferty was injured as a result of a fall on a stairway on Seven Oaks' premises.[1]  We affirm.

---

[1] Seven Oaks appealed from the order denying its post-trial motions on July 1, 2016.  An order denying post-trial motions is interlocutory and generally not appealable.  **See Levitt v. Patrick**, 976 A.2d 581, 584 n.2 (Pa. Super. 2009) (stating that appeal properly lies from the entry of judgment, not from order denying post-trial motions).  However, since judgment was entered on August 22, 2016, we consider the appeal as taken from the entry of judgment.  **See Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514-15 (Pa. Super. 1995) (stating that appellate courts may "regard as done that which ought to have been done") (citations omitted).

We briefly summarize the factual background and procedural history of this case. On October 25, 2014, Mrs. McCafferty "started down the stairway in question" at the country club and "had her hand on the rail." *See* Trial Court Opinion (TCO), 7/1/2016, at 9. "At some point in her descent, she began to lose her balance and put her hand on the rail again, but was unable to put her fingers around the rail. She then fell down the stairs into a wall." *Id.* According to Mr. and Mrs. McCafferty, the rail at issue was "comprised of a board measuring 1 5/8 inches by 5 5/8 inches, mounted by metal balusters affixed to the side, and reaching 1 7/8 inches from the top of the rail." McCaffertys' Brief at 6 (citation to record omitted).[2] As a result of her fall, Mrs. McCafferty "was rendered unconscious" and "suffered a gruesome, 'chandelier' break of the joints in her foot that facilitate movement of the foot. Both of her ankle joints are permanently fused, so that she cannot move her foot up and down or side to side." TCO at 18. Subsequently, on March 17, 2015, the McCaffertys filed this negligence action against Seven Oaks, alleging that Ms. McCafferty was injured because the stairs lacked a graspable handrail. *See* McCaffertys' Brief at 3 (citations to record omitted).

---

[2] *See also* Seven Oaks' Brief at 10-11 (acknowledging that the McCaffertys "presented the expert testimony of Robert T. Stevens, Jr., a registered architect. Mr. Stevens testified the stairway at issue is equipped with a 'railing guard on the left-hand side' which consists of a 1 5/8" x 5 5/8" inch board that slopes parallel with the stair. The 'board' is supported by 1-inch square steel balusters that are screwed into the side of the board down from the top of the board approximately 1 7/8"."") (citations to record omitted).

On February 5, 2016, a non-jury trial took place. On March 4, 2016, in its non-jury decision, the trial court found in favor of Mrs. McCafferty and against Seven Oaks in the amount of $427,382.91.[3] Additionally, the trial court awarded $50,000.00 to Mr. McCafferty for his loss of consortium claim. Seven Oaks subsequently filed a timely notice of appeal and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Seven Oaks raises the following issues for review:

1. Is [Seven Oaks] entitled to a new trial because the trial court did not disclose she was a former employee of [the McCaffertys'] counsel's law firm, or any other relationship between the court and [the McCaffertys'] counsel's law firm, or [the McCaffertys'] counsel, prior to the February 5, 2016 non-jury trial?

2. Was Seven Oaks entitled to a compulsory nonsuit and/or was Seven Oaks entitled to judgment notwithstanding the verdict because [the McCaffertys] failed to establish [Seven Oaks] violated a duty owed to [the McCaffertys]?

3. Was Seven Oaks entitled to a compulsory nonsuit and/or was Seven Oaks entitled to judgment notwithstanding the verdict because [the McCaffertys] failed to establish the alleged defective handrail caused Mrs. McCafferty's fall and subsequent injuries?

4. Is Seven Oaks entitled to a new trial because the trial court prohibited expert testimony during the non-jury trial regarding the applicability of building codes to the Seven Oaks Country Club clubhouse and the stairway upon which Mrs. McCafferty fell on October 25, 2014?

---

[3] Specifically, Mrs. McCafferty was awarded $27,382.91 in economic losses and $400,000.00 in non-economic losses.

5. Is Seven Oaks entitled to a new trial because the trial court ruled certain sections of the 2009 International Fire Code applied to the stairway upon which Mrs. McCafferty fell on October 25, 2014?

6. Is Seven Oaks entitled to judgment notwithstanding the verdict because, based on the testimony and evidence presented during the February 5, 2016 non-jury trial, the trial court's verdict was against the weight of the evidence?

Seven Oaks' Brief at 4-5.

First, we consider whether "Seven Oaks is entitled to a new trial because the trial court failed to disclose a prior employment relationship between the court and [the McCaffertys'] counsel's law firm, or any other relationship between the court and [the McCaffertys'] counsel's law firm, or [the McCaffertys'] trial counsel, prior to the non-jury trial."  Seven Oaks' Brief at 17 (emphasis omitted).  Seven Oaks asserts that "[a]fter receiving the court's non-jury verdict, which included a non-economic award identical to [the McCaffertys'] pre-trial demand, [Seven Oaks] discovered a newspaper article purportedly published by the Beaver County Times on May 12, 2005[,] which asserts the trial court had been an employee of [the McCaffertys' counsel's law firm] for a period of 10 years immediately prior to her election to the Court of Common Pleas of Beaver County."  *Id.* (citations to record omitted).[4]  Seven Oaks insists that a new trial is warranted

_____

[4] The trial court elaborates on her prior employment with the McCaffertys' counsel's law firm, explaining:

As a lawyer, the judge was affiliated with [with the McCaffertys' counsel's law firm] … in various capacities from 1996 through

*(Footnote Continued Next Page)*

because "[i]n the context of a non-jury trial, the failure by the trial court to disclose the aforementioned information, or, in the alternative, *sua sponte* recuse herself, clouds the entire matter with the appearance of impropriety." *Id.* at 13. We disagree.

*(Footnote Continued)* _____

> 2005. Initially, the judge was employed full-time by the firm for 18 months, from January 1996 through June 1997. She was employed part-time by the firm for about three years, from July 1997 through approximately 2000. For the next five years, from 2000-2005, she was an independent contractor at the law firm, and was paid on a 1099 basis, only on those matters that she brought to the firm. She was never a partner in the law firm.
>
> In addition to her private practice affiliation with the law firm, for seven years, from June 1998 through 2005, the judge was also employed part-time as the Beaver County Solicitor, and maintained an office at the Beaver County Courthouse.
>
> This information was readily available to any attorney and is well known by all lawyers who practice in Beaver County. A simple internet search, as [Seven Oaks'] [c]ounsel did following the trial, would have disclosed the information.
>
> The judge never considered the need to disclose her prior employment, because at the time of the non-jury trial in this matter, she had been away from the law firm for a longer time period than she had worked at the law firm. Her prior employment was common knowledge in the County. Additionally, the other judges who routinely hear civil matters … were members of Seven Oaks Country Club and were unable to hear this case.

TCO at 1-2. While Seven Oaks claims that "[t]he failure by the trial court to disclose this information … does not keep up with the 'norm of conduct' of the judiciary set forth in the Code of Judicial Conduct[,]" it also acknowledges that "the Rules of Judicial Conduct do not impose substantive legal duties on Judges within the Commonwealth nor do they give standing to others, including the Superior Court, to seek compliance with the Rules." *See* Seven Oaks' Brief at 19, 21 (citation omitted).

In general, our Supreme Court has explained:

It is incumbent upon the proponent of a disqualification motion to allege facts tending to show bias, interest or other disqualifying events, and it is the duty of the judge to decide whether he feels he can hear and dispose of the case fairly and without prejudice because we recognize that our judges are honorable, fair and competent. Once this decision is made, it is final and the cause must proceed. The propriety of this decision is grounded in abuse of discretion and is preserved as any other assignment of error, should the objecting party find it necessary to appeal following the conclusion of the cause.

If the cause is appealed, the record is before the appellate court which can determine whether a fair and impartial trial were had. *If so, the alleged disqualifying factors of the trial judge become moot.*

**Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority**, 489 A.2d 1291, 1300 (Pa. 1985) (emphasis in original).

However, when a party seeks recusal of a judge "for the first time after verdict, in post-trial motions or in arguments and briefs before the appellate courts, different considerations come into play." **Id.** at 1301. Specifically, our Supreme Court has observed:

Charges of prejudice or unfairness made after trial expose the trial bench to ridicule and litigants to the uncertain collateral attack of adjudications upon which they have placed their reliance. One of the strengths of our system of justice is that once decisions are made by our tribunals, they are left undisturbed. Litigants are given their opportunity to present their cause and once that opportunity has passed, we are loathe to reopen the controversy for another airing, save for the greatest of need. This must be so for the security of the bench and the successful administration of justice. Accordingly, rules have developed for the overturning of verdicts and judgments for after-acquired evidence. **In our view, recusal motions raised after verdict should be treated no differently than other after-acquired evidence situations which compel the proponent to show that: 1) the evidence could not have**

- 6 -

> ***been brought to the attention of the trial court in the exercise of due diligence, and 2) the existence of the evidence would have compelled a different result in the case.***

*Id.* (emphasis added).

With respect to this first factor, regarding whether the evidence could not have been brought to the attention of the court in the exercise of due diligence, Seven Oaks contends that "a review of the trial court's biographical website on the Beaver County Court of Common Pleas website reveals no association with [the McCaffertys' counsel's firm]." Seven Oaks' Brief at 26 (footnote omitted). Additionally, Seven Oaks claims that "two separate conferences with the trial court prior to the non-jury trial did not include any disclosure by the trial court or [the McCaffertys'] counsel pertaining to the former association, despite the fact two other judges of the Court of Common Pleas of Beaver County could not hear the case because of their association with Seven Oaks." *Id.* As to the second factor, Seven Oaks suggests that evidence of the trial court's association with the McCaffertys' counsel's firm would have compelled a different result in the case because "this case proceeded to a non-jury trial" and "there was no additional protection of the integrity of the fact-finding process in this matter because there was no jury." *Id.* at 27.

In response to Seven Oaks' request for a new trial on this basis, the trial court reasonably explained:

> [Seven Oaks] relies on a newspaper article that it searched for after the trial to state that it has 'after discovered evidence' of the court's former relationship with the law firm. There has been

no suggestion that this article was not readily available to [Seven Oaks'] [c]ounsel in the exercise of due diligence prior to the trial. Thus, any failure on the court's part to disclose her prior relationship with the firm[] could have been resolved if [Seven Oaks'] [c]ounsel had conducted due diligence on the judge prior to the trial. Unlike in **S**[*l*]**usser** [**v. Laputka, Bayless, Ecker and Cohn, P.C.**, 9 A.3d 1200 (Pa. Super. 2010)], the [c]ourt did not intentionally hide her relationship with the law firm. In fact, she assumed counsel was aware of the relationship, as it is well known throughout the local bar association. Moreover, nothing indicates that there would have been a different result in this case. [Seven Oaks] never alleged, prior to or during the trial, that the judge was unfair or biased. Only after [Seven Oaks] got a decision it did not like, [did Seven Oaks] claim[] foul play on the part of the judge. To grant [Seven Oaks] a jury trial under these facts would give it a second chance to get a more favorable decision, solely because it did not like the result of the non-jury trial.

TCO at 6-7. Based on the foregoing, we agree that Seven Oaks has failed to show that the evidence could not have been brought to the attention of the trial court in the exercise of due diligence, and that the existence of the evidence would have compelled a different result in this case. Accordingly, a new trial is not warranted.[5]

---

[5] We note that Seven Oaks also argues that "[t]he appearance of impropriety present in this case is sufficient to grant a new trial before another judge." Seven Oaks' Brief at 22 (emphasis omitted). However, "because the trial court judge has no financial connection to the [McCaffertys' counsel's] law firm, her prior affiliation with the firm was well-known, and she has been away from the firm for more than ten years[,]" we also reject this argument. **See** TCO at 4-5, 5-6. As the trial court and the McCaffertys discern, the facts of this case are much different than other cases where an appearance of impropriety has been found to warrant a new trial. **See** TCO at 3-6 (citing **Joseph v. The Scranton Times, L.P.**, 987 A.2d 633 (Pa. 2009), and **Slusser**, **supra**); McCaffertys' Brief at 19 (citing the above cases and **In Interest of McFall**, 617 A.2d 707 (Pa. 1992)).

- 8 -

Second, Seven Oaks argues that it "was entitled to compulsory nonsuit during the non-jury trial and is further entitled to judgment notwithstanding the verdict because [the McCaffertys] failed to establish [Seven Oaks] violated a duty owed to [them]." Seven Oaks' Brief at 29 (emphasis omitted). Seven Oaks asserts that it "cannot find any appellate law which stands for the proposition a rectangular handrail of dimensions similar to the handrail present within Seven Oaks creates a 'dangerous condition' as suggested by [the McCaffertys' expert,]" and it points out that Mrs. McCafferty "had … utilized the handrail without any issues pertaining to an inability to grasp the handrail in the past, and during her initial descent on October 25, 2014." *Id.* at 31, 33 (footnote omitted).

Initially, we note that Seven Oaks' claim that the trial court should have granted its motion for compulsory nonsuit is moot; instead, we consider Seven Oaks' argument regarding duty in the context of whether it is entitled to judgment notwithstanding the verdict. *See Whitaker v. Frankford Hosp. of City of Philadelphia*, 984 A.2d 512, 517 (Pa. Super. 2009) (explaining that "[o]nce a jury verdict in favor of [the a]ppellees was entered, the issue became whether the trial court erred in failing to grant them judgment notwithstanding the verdict") (citations omitted). We apply the following standard of review:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must

consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the court could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Brown v. Trinidad*, 111 A.3d 765, 769-70 (Pa. Super. 2015) (citations omitted).

In the case *sub judice*, the trial court determined that Seven Oaks violated a duty owed to Mrs. McCafferty under the Restatement (Second) of Torts § 343. *See* TCO at 7-8. This section states:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

In concluding that Seven Oaks violated this duty, the trial court reasoned:

[Seven Oaks] argues that it did not have actual or constructive notice of the dangerous condition which led to Mrs. McCafferty's fall. As the finder of fact, the [c]ourt disagrees. The country

- 10 -

club was constructed in 1978, and contained the stairway and handrail in question[.] However, a subsequent renovation to the building in 1990 involved two other stairways where a true, graspable[] handrail was installed for safe passageway on the stairs. While it may not have been aware of certain architectural standards, [Seven Oaks] should have known, at least after the renovations, that the handrail in question was different and potentially unsafe. We do not suggest that [Seven Oaks] had a duty to bring the existing building into compliance with newer Building Codes. But, Seven Oaks had a continuing duty to inspect and discover the dangerous condition. According to [the McCaffertys'] expert, the handrail never complied with industry standards of safety. Even a casual inspection of the handrail would have revealed that it could not be grasped for safety. The fact that it could not be grasped presented a foreseeable risk of harm that Seven Oaks had a duty to discover and remedy. ***See, e.g.***[,] ***Kirschbaum v. WROSB Assoc. d/b/a GSB Building, et al.***, 243 F.3d 145 (3d Cir. 2001) (where court found a 5/8 inch riser height defect on stairway created a foreseeable risk of falling, the landowner was required to discover and remedy the discrepancy).

TCO at 8-9.

Thus, viewing the evidence in the light most favorable to the McCaffertys as verdict winners, we conclude that they proffered sufficient competent evidence to establish that Seven Oaks violated a duty owed to them under the Restatement (Second) of Torts § 343. In its above analysis, the trial court provides a basis for determining that Seven Oaks should have known that the ungraspable handrail was dangerous and that it presented a "foreseeable risk of harm" to invitees like Mrs. McCafferty. ***Id.*** ***See Brown***, 111 A.3d at 769-70 ("If any basis exists upon which the court could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.").

Accordingly, Seven Oaks is not entitled to judgment notwithstanding the verdict on this ground.

Third, Seven Oaks asserts that it "was entitled to compulsory nonsuit during the non-jury trial and is further entitled to judgment notwithstanding the verdict because [the McCaffertys] failed to establish causation with respect to Mrs. McCafferty's fall and injuries." Seven Oaks' Brief at 34 (emphasis omitted). More specifically, Seven Oaks contends that the McCaffertys "had the burden of demonstrating the handrail's shape created a dangerous condition which was the proximate cause of Mrs. McCafferty's fall[,]" and because "a mere possibility of causation is not enough," the trial court should have granted Seven Oaks' motion for compulsory nonsuit. *Id.* at 42. Further, according to Seven Oaks, it "was entitled to judgment notwithstanding the verdict for [the McCaffertys'] failure to prove causation." *Id.*

Like the previous issue, Seven Oaks' claim regarding whether it was entitled to a compulsory nonsuit on this basis is moot. *See Whitaker*, 984 A.2d at 517. Rather, we consider whether it was entitled to judgment notwithstanding the verdict due to the McCaffertys' purported failure to establish causation.

"Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm. Proximate cause does not exist where the causal chain of events resulting in [the] plaintiff's injury is so remote as to appear highly extraordinary that the conduct could

have brought about the harm." ***Lux v. Gerald E. Ort Trucking, Inc.***, 887 A.2d 1281, 1286-87 (Pa. Super. 2005) (citations omitted). This Court has explained:

> In order to establish causation, the plaintiff must prove that the breach was "both the proximate and actual cause of the injury." Proximate cause is a question of law to be determined by the court before the issue of actual cause may be put to the jury. A determination of legal causation, essentially regards "whether the negligence, if any, was so remote that as a matter of law, [the actor] cannot be held legally responsible for [the] harm which subsequently occurred." Therefore, the court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of.

***Id.*** at 1287 (citation omitted; brackets in original).

Here, the trial court summarized the testimony of Mrs. McCafferty at trial as follows:

> Mrs. McCafferty[] testified at trial that as she started down the stairway in question, she had her hand on the rail. At some point in her descent, she began to lose her balance and put her hand on the rail again, but was unable to put her fingers around the rail. She then fell down the stairs into a wall. On cross examination, Mrs. McCafferty testified that she could not remember whether or not her hand was on the rail while she was walking, but that she did grab for the handrail and was unable to grasp it despite getting her hand to it immediately before she fell down the stairs.

TCO at 9.

In light of this testimony, the trial court found that proximate cause existed, reasoning:

> In all of [the] cases [relied on by Seven Oaks], individuals reached out for handrails that did not exist after having already fallen. None of the cases [Seven Oaks] relies upon involve faulty handrails that contributed to the plaintiff's fall. In the instant

- 13 -

case, [Mrs. McCaffferty] began to lose her balance, and attempted to grasp the existing handrail. Her inability to grasp the defective handrail then precipitated the fall which [led] to her injuries.

[The McCaffertys] rely on the more factually analogous case of **Schaff v. Meltzer**, [114 A.2d 167 (Pa. 1955),] involving a fall at least partially caused by a faulty rail. [] In that case, Mr. Schaff began descending a set of stairs, turned to go back, tripped over an unlevel floor board, and began to fall. **Id.** at 168. Mr. Schaff then attempted to grasp the handrail, but the handrail pulled out of the wall, sending Mr. Schaff down the flight of stairs. **Id.** The Pennsylvania Supreme Court noted in its opinion that[,] "If anyone of these conditions were proved by the plaintiff to have been the proximate cause of the accident, or, if all of these conditions together made out a case of prima facie negligence, he was entitled to have his case go to the jury." **Id.**

In the instant case, [Seven Oaks] contends that Mrs. McCafferty fell due to losing her own balance, and not because of any defect in [Seven Oaks'] property. However, like in **Schaff**, Mrs. McCafferty began to lose her balance and reached for the handrail. The inability to grasp a defective handrail due to its faulty design is certainly, while perhaps not as extreme, closer to grabbing a rail that pulls out of a wall than it is to not being able to find a rail that does not exist in the midst of a fall. And even if [Mrs. McCafferty's] fall was not initiated by any other defective condition on the stairway, her attempt to grasp the faulty railway alone is enough to take the issue of liability to the factfinder. **See**[] **Schaff**, 114 A.2d 168.

In the cases cited by [Seven Oaks], the absence of a rail did not cause the falls, but instead, only prevented the falling individuals from arresting their falls once the falls had begun. In the instant case, like in **Schaff**, Mrs. McCafferty began to lose her balance, attempted to grasp the rail, and the inability to grasp the rail securely [led] to her fall. The faulty handrail was not just unable to prevent [Mrs. McCafferty] from arresting her fall; [its] defectiveness, combined with her momentum toward it and reliance on its functionality, propelled her forward, and was, in fact, a proximate cause of her fall.

TCO at 12-14.

Again, viewing the evidence in the light most favorable to the McCaffertys as verdict winners, we conclude that there was sufficient competent evidence to establish proximate cause in this case. *See Brown*, 111 A.3d at 769-70. The ungraspable handrail was not so "remote" that as a matter of law, Seven Oaks "cannot be held legally responsible" for Mrs. McCafferty's injuries. *See Lux*, 887 A.2d at 1287. Put differently, an individual falling down a stairway could be foreseen by an ordinary person as the natural and probable outcome of having an ungraspable handrail. *See id.* Moreover, the evidence in this case was not such that "no two reasonable minds could disagree that the verdict should have been rendered for" Seven Oaks. *Brown*, 111 A.3d at 769-70. As such, Seven Oaks is not entitled to judgment notwithstanding the verdict on this basis.

In Seven Oaks' fourth and fifth issues on appeal, it argues that it is entitled to a new trial because the trial court erred in its pre-trial ruling "prohibiting expert testimony regarding the applicability of building codes to the … clubhouse and the stairway[,]" and in "finding certain sections of the 2009 International Fire Code applied to the stairway[.]" Seven Oaks' Brief at 43, 45 (emphasis omitted). In advancing these arguments though, Seven Oaks acknowledges that the trial court does not appear to find that Seven Oaks "violated any particular building code or relied on building code definitions or standards" in its opinion and therefore maintains this argument on appeal only "out of an abundance of caution." *Id.* at 43 n.16. *See also id.* at 29, 48. We agree with Seven Oaks that the trial court found Seven

- 15 -

Oaks liable under a general negligence theory only, and did not conclude that it violated any particular building codes. *Id.* at 29. As such, these issues are moot, and we need not address them herein.

Finally, Seven Oaks claims that "the trial court's verdict was against the weight of the evidence." *Id.* at 49 (emphasis omitted). In support of its argument, it merely reiterates that the McCaffertys failed to prove that Seven Oaks breached a duty owed to Mrs. McCafferty and failed to prove the shape of the handrail at issue was a proximate cause of her fall. *Id.*

When a party challenges the weight of the evidence, we apply the following standard of review:

> Appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> *In re Estate of Smaling*, 80 A.3d 485, 490 (Pa. Super. 2013) (citing *Commonwealth v. Clay*[,] … 64 A.3d 1049, 1055 (Pa. 2013)). "The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Samuel–Bassett v. Kia Motors Am., Inc.*[,] … 34 A.3d 1, 39 (Pa. 2011). "The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the

facts and inferences of record disclose a palpable abuse of discretion." ***Id.*** (citing ***Commonwealth v. Cousar***[,] … 928 A.2d 1025, 1035–36 (Pa. 2007)). When a fact finder's verdict is "so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking." ***Farelli v. Marko***[,] … 502 A.2d 1293, 1295 (Pa. Super. 1985) (quoting ***Green v. Johnson***[,] … 227 A.2d 644, 645 (Pa. 1967)).

***Brown***, 111 A.3d at 770 (citation, footnote, and brackets in original omitted).

Here, based on our review of the record, we do not deem the verdict to be "so contrary to the evidence as to shock one's sense of justice." ***Id.*** For the reasons already addressed above, the trial court did not palpably abuse its discretion in finding that Seven Oaks violated a duty owed to Ms. McCafferty and that the ungraspable handrail was the proximate cause of her fall. As such, the verdict in this case was not against the weight of the evidence.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017

- 17 -